We have 4090036 Rose White v. Garlock Sealing Technologies. We have for the appellant, Paul Wosicki, and for the appellee, James Walker. Good morning. May it please the Court, Counsel, my name is Paul Wosicki and I represent Garlock Sealing Technologies. The issue before the Court today involves Rule 237, the proper interpretation of Rule 237B, and therefore requires a de novo review by this Court. What occurred below is that the trial court in the first trial of this matter determined that a physician who was not an employee officer or director of Garlock was nonetheless amenable to the notice provisions of Rule 237B and could be required to appear at trial pursuant to a Rule 237B notice. Garlock did not produce the physician, objecting on the grounds that because the physician did not fall within one of the categories of persons enumerated in the rule, the rule did not obligate it or mandate that it bring the witness to trial. Were you trial counsel at both times? Our firm was. I was not trial counsel. At trial, the Court ultimately sanctioned Garlock by issuing a missing witness instruction because the physician was not brought. And that was the only witness who was not brought, correct? That is correct. It was the only issue under 237B. The case resulted in a defense verdict as the Court I'm sure well knows that resulted in a new trial order and ultimately appealed to this Court. When this Court addressed the 237 issue, it looked at one aspect of the issue, the appropriateness of the sanction entered given that the trial court had found a violation. The Court did not examine the underlying question of whether or not the trial court properly found a 237B violation in the first instance. The Court did not construe 237B. The Court did not examine the language of the rule and apply it to the facts of the case. The Court acknowledged that the trial court found that the physician did not fall within the categories of persons amenable to a notice under 237B. This Court acknowledged that finding, but it did not address whether that finding was correct. Nonetheless, the Court affirmed the new trial order and the case went back for the new trial. In connection with the new trial, plaintiff again served a 237B notice for the non-employee, non-director, non-officer physician. And again, Garlock did not produce the witness, objecting to and moving to quash the notice on the grounds that the witness was indeed beyond the scope of Rule 237B. How do we know that? Pardon me? How do we know that the witness is really beyond the scope of 237B? Well, one, we have the evidence-induced burst in connection with the first and the second trial, where we had affidavits from Dr. Carlson himself, as well as from Garlock, as well as from Dr. Carlson's employer. Do we have a copy of the contract between Garlock and the doctor's employer? There is. That contract is in the record. And indeed, the very existence of that contract further buttresses the argument that Dr. Carlson is not a Garlock employee, officer, or director. He is coming to Garlock. His services are being provided through Health Works. Wouldn't it be also appropriate to know whether or not Dr. Carlson was under the control of Garlock, recognizing that he works for somebody else but is under contract to provide services to Garlock, and where the control factor is in that? Under the rule, for purposes of determining whether Dr. Carlson falls within the rule, the answer to that question, I believe, is no. The question is not, does the party exert some control over a non-employee, officer, or director. The sole issue is whether the witness, whether the person subject to the notice or identified in the notice, holds the position of employee, officer, or director. Let me push you on that just a little bit. And I'm going to make a construct that's going to sound terrible for your client. I don't mean it that way. But let's presume that your client said, well, you know, we don't want to have a doctor that's discoverable. So let's go out and contract with this other entity and have their employee doctor exclusively provide services to our employees. And therefore, we shut off any ability to discover anything that that doctor knows. Well, I mean, I understand how the rule is written. But my question is, would it have been possible for your client or any other company to construct such an arrangement so as to effectively forever preclude discovery in a case like this? Well, I think the answer to that clearly is no. Because it's not an issue of discovery or discoverability of the existence of the contract, the existence of the relationship, or the services. Or compelled testimony. Compelled testimony under Rule 237B. The plaintiff is more than capable of having the witness come in under a subpoena. I mean, that's normally how it's done. In fact, Rule 237B, as the G.D. Serial case shows, is not there to change how non-party witnesses, non-party employees, or third parties are brought into court. It's there simply to obviate the need to serve a subpoena on a party to have a party present. And when you have a corporate party, what the Johnson v. Owens Corning case and what G.D. Serial. Let me ask you this question, counsel. I'm switching sides for the moment. Let's assume that the trial court had decided at the trial level that Dr. Carlson was not an employee of GARLOC and not capable of – and GARLOC was not subject under Rule 237B to require Dr. Carlson to appear. You are counsel for plaintiffs. You think Dr. Carlson's testimony is important. What could you do? Well, what I'd do in cases that have gone on for years and years and years. I'd serve a – first, I'd contact the doctor's office and see if he would agree to appear without a subpoena. And then, if he wouldn't, I'd file an action in New York and I'd have a process issued. We have Rule 204. We have a process here where there's an action pending in a foreign jurisdiction. Illinois will issue a subpoena to an Illinois witness over whom the court may acquire jurisdiction. And – What if he wanted to – I don't know, was Dr. Carlson ever deposed in this case? He was not deposed in this case. He was deposed subsequently, but he was never deposed in this case. He was not deposed in advance of the 2005 trial, and he was not deposed in advance of the 2008 trial. So, if you wanted to depose him and he was not happy about that or willing to undergo deposition, what could you do? I'd file an action in New York. You have a subpoena issued. Now the court's got jurisdiction. He's subject to contempt finding. He is subject to compulsory process power. And, again, that is the normal course. That is how third-party, non-party witnesses are brought into court in cases every day. There's nothing new about that suggestion. We, again, have – there are rules corresponding throughout the country that allow a party in Illinois who needs testimony from a witness in Missouri to file an action and to get that witness under the subpoena power of the Missouri court. And, again, we have our rule that accommodates actions pending in other jurisdictions. That's the way it is to be done when you're talking about a non-party. Again, this rule that we're talking about here, if the drafters wanted it to apply to any agent, to anybody with whom a party has a relationship, if they wanted to totally alleviate the need to ever serve a subpoena to bring any kind of witness into trial, the drafters could have drafted a rule like that. Instead, they crafted the rule for a very narrow purpose and used very narrow language. It's to alleviate the need to serve a subpoena on a party to bring that party into court where parties of corporation, an employee, officer, or director may be brought in under notice. And, interestingly, the court also accommodates, or the rule also accommodates, for the fact that people may have to travel great distances, be brought from other parts of the country by allowing and providing for fees and costs to be paid to bring that party witness by the opposite party who desires that the witness be brought. So the rule itself is very clear, very precise, and the trial court's rulings cannot be squared with the language of the rule. And we know that they must be to be upheld. The Bright v. Dickey case, the estate of rent-a-case, the subsequent – and those are both, of course, out of the Supreme Court – the subsequent decisions in Berry and Longstreet out of the appellate court all make very clear that, indeed, Supreme Court rules are to be applied as written, consistent with the plain and ordinary meaning of the text used. And here's where the trial court run afoul. If we look at the transcript where Judge Salk initially is contemplating what he's going to do in this situation, the question he asks, do I have to apply the rule based on what the text says? Is there room for me to interpret? Can I go beyond the wording of the statute of the rule, and can I divine the spirit of it and apply the rule in a way that I believe consistent with the spirit? And he ultimately said, yes, I can. Well, with all due respect to Judge Salk, he was wrong on that one. And we know that because that's what Bright v. Dickey and Berry v. Longstreet tell us. That no trial judge, you cannot go ahead and apply rules the way you think they should apply. You have to apply them the way the language says they are to be applied, apply them in a manner consistent with the language used. Where's the Health Works contract in the record? I don't have a specific records site on that. When was it presented to the trial court? It was presented, I believe, in context of the 2005 motions of quash leading up to trial. And it's in the record then from the prior proceedings on the 237B in front of Judge Salk himself. It's not going to be in any of your appendix? It should be in the, I believe it's in the GAR, G-A-R documents that we submitted because they were originally not included in the record on appeal. And they were subsequently added through a motion to supplement. So if they're not in the appendix that has the GAR documents, well, they should be there. They also should be in the supplemental record on appeal. But I will endeavor to provide a precise site. There's an affidavit of Ramon Mathis which talks about Dr. Garlock or Dr. Carlson or others being the medical director of Health Works? Right, of Health Works. Again, separate and independent entity. And the interesting thing about Health Works, and it kind of goes to what Judge Appleton mentioned earlier, which is Health Works was not contracted solely with Garlock. Health Works provides independent medical services to many companies in upstate New York. And Dr. Carlson wasn't just the Garlock doctor. He wasn't just someone put at Garlock through Health Works. Rather, he would service or treat employees of Health Works clients throughout the area and would come into Garlock on an as-needed basis. Judge Appleton, you also raised the question of what if. What if someone tried to hide a doctor and avoid Rule 237 by outsourcing that need? While maintaining control of the doctor. Right. Kind of a sham, I guess, employment. One, I think that doctor would be discoverable. I think you would then have, if the facts were such that the sham was revealed, that in fact the doctor spent 100% of his time, that the doctor was paid through the party, that the doctor was in fact the de facto employee of the party, then you might have an argument that 237B applies. But the interesting thing is here that not only do we not have that situation where we have a sham kind of relationship done solely to avoid the application of 237B, which even if you were to accomplish that, wouldn't prohibit the doctor's testimony from being obtained under subpoena, but we have the finding of the lower court. Judges who looked through everything and heard all the evidence, we have the finding that indeed this is not a sham situation. Dr. Carlson is indeed not an employee, officer, or director of Garlock, but he works for a company who had a contractual relationship with Garlock, and the court felt he could extend the rule's scope. Notwithstanding the language, he could go beyond the language. And that really is where the court erred in not applying the rule as written. Do we know how much Garlock was paid? Excuse me, not Garlock, but Carlson was paid? Well, I don't know what his yearly salary was paid, but Carlson was not paid by Garlock. Health Works would be paid by Garlock on an hourly schedule, and I believe those schedules are in fact reflected in the contract documents. Again, I apologize I don't have that citation, but I know there are schedules that said when the doctor, for every hour he devotes to Garlock-related work, there is a fee for his services. So it's similar, obviously, to retaining a law firm. We will have this partner, that partner, this associate available to you, and those will be the rates when they provide services. And that's exactly what this contract was between Garlock and Health Works. It's a services contract. It's not an exclusive. Health Works is not some front for a Garlock department or a subsidiary. Health Works is part of the Thompson Medical Center. It's a freestanding, independent organization, and that's what the evidence in the record shows. Because this court did not address the issue of the propriety of the sanctions in the first instance, the first time the case came through on appeal, the court must do that here, because the issue now is squarely presented to it. Plaintiff argues for the law of the case doctrine. That only applies to where an issue is, in fact, actually addressed and decided, and I don't think there's any fair way of reading the court's prior decision that suggests it looked at anything but the appropriateness of the sanction without looking at whether or not a violation occurred. Plaintiff argues for the application of offensive race judicata. There are several problems with that suggestion on the plaintiff's part. First of all, offensive race judicata collateral estoppel should be limited or authorized in extremely limited circumstances because of the great unfairness that can accompany it. Here, plaintiff can't make out the basic elements of race judicata because, one, the issues are different. You're looking at different time frames. What was going on in 2003, 2004, 2005 versus what was going on in 2008. It doesn't tell us anything about Dr. Carlson's status. So in this type of question that is so fact-based, the issue changes as time progresses. It's really not the same issue. But perhaps more importantly, if you look at what resulted in the Vieira case that plaintiff makes reference to, now that judgment, uncertified, has been put on record. But what that judgment reveals is that Garlack ultimately was a prevailing party. Well, the court entered a sanction and struck pleading, saying, Garlack, you should have produced Dr. Carlson while Garlack vehemently objected and filed motions for supervisory orders and did everything it could to disabuse the court that it had properly interpreted the rule. At the end of the day, because the judgment against or the damages awarded against Garlack were less than the monies the plaintiff had already recouped in settlement, the court ultimately dismissed the case against Garlack in the very judgment centered on the verdict. So there was no basis, there was nothing for Garlack to appeal. On appeal, it could have only sought some type of advisory order because there was no relief for it to him. In light of the trial court's failure to properly construe and apply Rule 237B and then subsequent improper imposition of sanctions based on that ruling, we ask that the court reverse the judgment entered below and remand the case for a new trial on all issues including causation in terms of the newly decided Nolan decision. Alternatively, we ask that the court order a remitter. We haven't spent a lot of time on the damages issue, but the fact of the matter is the record is devoid of damages evidence. We heard generalities about what a great guy Mr. White was up until about the time of his retirement. We heard generalities that he was a pretty good boss and a hard worker. We heard generalities that after his retirement, he was there for his spouse, Mrs. White. And that was all wonderful and it was compelling evidence of a strong relationship or a happy relationship. But it was not evidence of monetary contribution or economic loss sustained by the plaintiff or the estate. And so the jury was left to decide the case, at least on the damages standpoint, based on passion, based on sympathy. And for that reason, the 500,000 verdict cannot stand is by definition excessive. We suggest a remitter down to $100,000 as an alternative. But our primary request for relief is indeed that the matter be remanded for a new trial. Thank you. Thank you, counsel. Mr. Walker. May it please the court. Many of us were asked by a child or a friend or something, you know, I decided to take Johnny's cell phone away for two weeks. I'm just not sure I did the right thing. What would our first response be? Well, what do you do? That's what you ask when this case was in front of you in 07. Garlock appealed and said, you know, Judge Suit did the wrong thing, saying that we have to submit to a new trial again on all the issues and that our guy can't testify on some things. That's just not right. Rose White appealed and said, Judge Suit didn't hammer them enough. They cheated on 213, they cheated on 237. This trial should just be on damages only. We heard you ask in your opinion. Well, what did Garlock do? And you did a good job of setting forth the frankly unbelievable flexibility of Garlock, first saying, well, it really wasn't inconsistent with his opinion. Then Garlock said, well, we knew it was inconsistent, but we told him. Don't mention those new opinions. Of course, he did. And then you were enamored with Judge Suit who had a post-trial hearing and got the witness there and said, hey, let's try your under oath version of what happened. And the witness said, I told them I had a new opinion, and they didn't tell me not to mention it. Well, by this time, Judge Suit was rightfully a little ticked off. You should be ticked off on the other issue. You didn't say in your opinion, well, we asked what did Johnny do, and we got the answer and we found that he really did it, and so we approved the two-week suspension of the cell phone. But you said we find Judge Suit applied the same careful consideration to the 237 issue as he did the 213. You couldn't have said that without answering in your own mind, well, what did they do, and was this appropriate sanction? Was that really before us, Mr. Walker? Yes, the 237 was before you. I thought it was the issue of the sanctions, not the issue of whether it was an appropriate finding. Well, my story must not have done its job. What I'm saying is inherent in my complaint for Rose White that the sanction wasn't appropriate was your own internal analysis of, well, what did he do? You can't tell if the sanction's appropriate enough until you figure out what they did. And the language in your opinion said that it's sanctioned for the violation of Rule 237. I'm now quoting this court. For the violation of Rule 237B, we find that he didn't abuse his discretion on that point. So just common sense would indicate you had to have looked at that. You make a good argument, Mr. Walker, but as the person who authored White 1, I will tell you that it's not what I meant and it's my oversight. What can I do after that? Well, that's right. And I mention that to you because in retrospect it should have been more clear and I should have done a better job in writing. So having said all that, let's talk about whether Rule 237B was violated. And I will. I just want to say two last things on that, Judge. They did say in their brief we shouldn't have been sanctioned at all because we didn't violate the rule, and they said it again in their petition for re-hearing. And I don't expect you to say anything in response to this, but I suspect you read their briefs in their petition for re-hearing. Was Supe right in the first instance? Garlock is saying, well, there wasn't enough discovery about Dr. Carlson. I had an interrogatory answer under oath from Garlock saying, in response to the question, has anybody been monitoring the health of your employees? They said, Dr. Carlson, Garlock Sealing Technologies, Palmyra, New York. When I had that person on the stand, shall we say their designated corporate witness in the first trial, I said, did you sign that affidavit saying that's a correct answer to that interrogatory? Yes, I did. Was it correct when you signed it? Yes, it was. Was it still correct today? Yes, it is. He's still the company physician today, the day I'm on the stand, November 10, 2005. What does that mean? Well, it certainly means that Dr. Carlson at Garlock Sealing Technologies, such and such a street, Palmyra, New York. Oh, and he said, and that medical office there, that's 30 feet from my office at Garlock headquarters in Palmyra, New York. How do you accept this? Mr. Walker, let me ask it this way. You've been one of the distinguished members of the bar appearing before the 4th District for a long time, handled an awful lot of involved and complex civil litigation, and obviously are very familiar with Rule 237B. Let's all preface to asking this question. Why didn't you use the word employee in that interrogatory or at any other time when you pursued the 237B matters? Actually, the interrogatory has more to do with our liability. It's sort of the net we're trying to catch things on liability in terms of, you know, who knows whether your workforce is sick or not. I mean, it goes like this. They say, our products don't make anybody sick. We say, well, it made your people sick when you made them, so you knew it was going to make our people sick when they used them. So its etiology is not precisely for 237B. But if you look at the rule, the rule is based on the court's power. I mean, you helped me in the Owens Corning cases when some of those old employees were just down to the director's stage. They weren't even employees anymore, but they were still directors. And you said, you know, that's in the rule. That's a relationship. You have to break them or show that you failed trying. A lot of directors are not ever even employed by the company for which they're a director. It's the relationship that gives the corporate defendant sufficient power to bring the director, or if the director chooses not to come, they have to say, all right, well, you're gone as a director. The same is true here. The relationship was strong and sufficient. Well, I understand that's the argument, and that's the argument you made to Judge Suk, and he thought that was important, but none of this answers my question. Why didn't you use the word employee at any point during the discovery process here to see if, under 237B as written, Dr. Carlson was an employee of Carla? Well, I thought I tried to answer that, Judge. The truth is that interrogatory is not a, I mean, I'm not setting him up for 237. I'm not setting him up. That interrogatory is my way of finding out information about other things. I don't find any shortcomings myself in whether the interrogatory says are these people whatever. You're asking who's monitoring the health of your employees because that has to do with, you know, we believe that it makes them sick at the plant just like it makes our people sick when they use it. Well, if we disagree with you that the term employee can be construed broadly as to mean someone who, if Garlock has some substantial control over or controls some kind, even though it may not be a technical employee, can you prevail in this litigation? Well, Garlock is a litigant in this case. It's submitted to Judge Suk and Judge Prowse and your jurisdiction. So the only real limitation is does Garlock have power to do that which the referee at the time said, hey, we've got this dispute, you've got some evidence, bring that evidence in here, we'll dump it in the pile, shake it around, the jury will decide what it is. If they have no power, if they have no power, they should never be punished for not bringing the guy. But if they have the power to bring him, they should bring him. That's what our whole, that's the whole idea of getting together in the courtroom and offering evidence to the jury and deciding the disputed facts. We asked the opposing counsel what he could have done were he in your shoes and the trial court had ruled that Carlson wasn't an employee of Garlock and Garlock wasn't required under 237B to produce him. We provided the scenario as you heard. Is he correct? Why do people go to the art gallery instead of reading the coffee table books at home? Why do you and I go to the assembly hall instead of listening on the radio? Why do you conduct oral argument when you've got the briefs in front of you? It's because of that exchange when things, when everybody is together, you can get things done you can't otherwise do. You can push aside things that look big because of concessions or whatever. There's just a whole human history of why we get together and do things. That's why none of us would ever use a deposition if we could get the witness alive. The jury expects it. I've made my living doing it. I'm inferring that that's yes? Yes, yes. There's a lot of opinions saying life, but a deposition is never an adequate substitute for a live testimony. It never is. Could you have had the judge here issue a subpoena and then take that subpoena to New York and registered it with the court in New York and forced this doctor to come testify? In New York probably, but I don't think you could. I don't think that scenario would put him in Illinois in front of an Illinois jury. Have you ever tried it? Well, no, but what would be the Illinois court? I mean, it was a 237 case. It's got a trucking company in its name. Judge Casely tried to get the financial officer here and held the financial officer in contempt and the court said probably before at least some of you, well, the power is over the corporation. You can't hold the individual employee in contempt for not coming. So I don't know how Illinois could hold Dr. Carlson in contempt absent him being in the state of Illinois. The entity that's in front of you is Garlock, and Garlock's the one that you tell, bring this document, bring this human, bring whatever. And in each instance, it only can bring in an employee if the employee will come. Looking at the language of Rule 237B, the Supreme Court, when they promulgated this, continued to keep it in its particular language. It's pretty clear about terms of art and what these terms mean as opposed to what the legislature would be presumed to know. I think in the case of the Supreme Court, we know they know what these terms mean, and particularly in light of your argument that employees should be broadly viewed as being someone controlled under the control of a party. Why should we interpret the Supreme Court rule in that regard, especially when, for instance, the Supreme Court in Rule 213, if they mean to use the word control, can and has used the word control with regard to 213F3, for instance, the controlled expert witness, as opposed to the regular expert witness. They're perfectly capable of, and that was three years before 2005 that they figured in Supreme Court rules to use this term. Why shouldn't we just say the Supreme Court of Illinois understands the concept of who is an employee and who isn't, and if someone is not an employee, that's the end of the inquiry? I'd like to get back to the evidence about the relationship, but the answer to your question is that 220 was not a roaring success, and so it got rewritten in 213, and that's where this concept of a hired gun came in, which the Supreme Court, being far more professional than I am, called it a controlled witness. So I don't know if that distinction helps the idea that you were... Your argument is that Dr. Carlson is a controlled witness here, isn't he? I hope to tell you he's a controlled witness, of course. Why didn't they say employee, officer, director, or controlled witness? Again, like I said, they didn't experience the failure under 237 that they did under 220, so they developed this three-tier scheme in 213. That's my best guess, I'm just saying. Like I said, you've helped me bring the testimony of non-employees, non-officers, who had the relationship called a director. That's a term used in the rule. Yes, but what I'm saying is it's just a demonstration that the only thing important is the economic relationship. You never would require, nor am I suggesting, that they have to send out a bunch of strong men and wrestle the guy in. All they do is if he was the president of the company, all they say is, John, go to this place at this time and take the oath and testify. If John doesn't come and the entity fires John, nothing bad happens to the entity. They just must exercise whatever control they had. And so I'm saying from a jurisdictional, from a fairness concept, if there's enough control, it ought to be exercised, because that's what we're here doing, we're seeking out the truth. And if they've got some truth, they ought to bring it. But I would like to spend one minute on the facts. These are the facts supportive of Mrs. White's position. Sworn interrogatory answers saying, Dr. Carlson, Garlock Ceilings Technology, such-and-such a street, Palmyra, New York. In 05, James Heffron, their hired witness, says, That was true when I signed it. It's true today. He's in charge of our medical monitoring program. He has the X-rays. And part of this is important because in 1947, there was an important study that told Garlock, You're using a poison in your product. How can you be sure you aren't killing your people unless you medically monitor them? And you're not doing it. Garlock, when I do that, they always say, Oh, he started right away in 47. And then I say, Well, gosh, who knows about that? And, of course, it never makes it to the courtroom. But if, in fact, this guy has been doing these things, and if their own witness, James Heffron, says he's doing these things, whether they use the label medical director, or whether they use the label employee or officer or medical officer or whatever, he's the head of the medical department that's 30 feet from Heffron's own office. How much more do you want him to be in order to say, You know, it's fair, Garlock. You've used this guy to medically monitor, to do all these other things. There's nothing wrong with our or the court system asking you, Do the best you can to bring that guy out here. Because, obviously, he knows about things relevant to that which you forced the jury to learn about since you denied Mrs. White's complaint. And I think that's what makes this position fair. Garlock says things changed between 05 and 08. In August of 08, we got ready for the trial. And I assume you read. Judge Prowl said, Well, here's how I look at the opinion. You, Walker, you were complaining that the sanction wasn't strong enough under 237. The 4th District said, Well, we've looked at this. It looks like he did a good job in the other area, and he did a good job in this area. And so we affirm what he did. That includes finding that they violated and the sanction he imposed. So, based on that, are you saying the things are the same, Garlock? Different Siegel, McHenry's lawyers, there were a guy named John Cockey. He said, That's my understanding. Then Judge Prowl said, Then he needs to be here. There was no difference between 05 and 08. And to my amazement, when you asked that there be supplemental briefing on this issue, in their supplemental brief on page 4, Garlock, signed this time by Mr. Wasicki, said the relationship was the same in 08 as it was in 05. So you talk about the Mathis affidavit. Mathis said, He's never done anything for us since 03. Well, their own records show he did it in 04, 05, 06, 07, and 08. So, I don't know how you give so much credibility to that guy, who's been clearly impeached by their other records showing that they're still paying in 08. I think there's sufficient evidence in this record to show that that which Judge Suk relied upon, and that which, although you were invited to say it was wrong by Garlock, you didn't say it in your first opinion. No, you invited him. They didn't. No, he invited him. He said, There shouldn't be any sanction at all because we did violate Rule 237. They keep neutral. I raised the issue, but what I'm saying is, his argument was, You shouldn't sanction us all for 237 because we didn't even violate 237. And then after you wrote your opinion, there was a petition for re-hearing. He said, You should have just held we didn't violate Rule 237. And again, you denied that petition. So, I think there's a stronger factual support for Judge Suk, and thereby Judge Fahl's conclusion, that this person is subject to the power of the All-American Court System, excuse me, that the relationship is such that it is appropriate to ask Garlock to bring this person, and then we get into what they did to bring him, and of course, Garlock skillfully stayed away from that, because as Judge Fahl said, he did too little, too late, by absolutely the wrong people. Instead of all the people that have been working with Dr. Garlock, Dr. Carlson, through all the years, they have a Chicago lawyer that's never mentioned, seven days before the trial, address a letter to him. Instead of building on the relationship that brings him to Garlock's aid, all the other things he does for him. So, they did... Who's phone number at your time, is it? Okay. Thank you. Mr. Levitt. Thank you, Your Honor. May it please the Court. The power that is in discussion here, is the power over the party, not the power over any particular individual. Who constitutes a party? When you're talking about a corporation, it's employees, officers, and directors. To suggest that a director, who is part of the governing body of the corporate entity, is somehow less attached to a corporation, less related to a corporation, than is one of its employees or officers, is pure sophistry. And that's why the rule identifies officers, directors, and employees. If we look at the overarching question, put aside the rules language, heck with the rules language, let's go and just say, this was somebody they had control over. We run afoul of everything the Supreme Court says about construing Supreme Court rules. We cannot throw aside, this Court cannot throw aside Mr. Walker, the trial court cannot throw aside the language of the rule. We all must abide by the language of the rule. Here, Judge South declined to do that. Judge South found, and you acknowledge it, you wrote in your opinion, although Judge South found Dr. Carlson is not an employee, officer, or director, he nonetheless agreed with Mr. White, or Ms. White, that there was, he was in a position akin to, or something like, an employee, and so we're going to go ahead and order him in here. Well, Judge South may have been trying to do the right thing, what he thought was the right thing, but he was incorrect, because Rennick, and Bright, and Berry, and Longstreet, all tell us, as do a legion of other cases, that Supreme Court rules are to be applied in a manner consistent with their language. He said, no, I don't have to do that. I'm going to interpret it on my own, and he erred in doing that. Judge Carl followed along blindly without doing his own analysis, and his decision is incorrect. Have you ever successfully forced a doctor to come testify in a case? We've never forced a doctor, successfully forced a doctor to come testify. I'm not saying this doctor, I'm saying any doctor. An out-of-state doctor. Not that I'm aware of. Not, unless we've had a doctor that has been engaged to consult on a case, and agreed to testify as a consultant. Have you ever pursued an evidence deposition with an out-of-state doctor? Have I personally? Or your firm? I mean, I've pursued evidence depositions with various types of out-of-state witnesses, and I've followed along the procedures, allowing issuance of subpoena by the jurisdiction in which they reside. And one of the interesting things... Have you ever had anybody refuse to comply with the subpoena? Right, and then I've gotten contempt orders, and ultimately they... Contempt orders like in New York? Right, and so the refusal was temporary, or the objections were overruled. And usually when you run into problems with doctors, it's how much, not whether they'll appear, or how much per hour. So those have made for some interesting motions as well. The issue about live testimony versus deposition testimony, fortunately has been resolved by the age we live in, the great age of technology, where if you go and depose somebody in New York, you can put together a video record, and I can tell you, and I think we all know, that juries are not put off by seeing a witness on video. We're all quite accustomed to gathering information. I don't know whether they're put off, but I certainly have trouble keeping them awake. Well, I think it all depends on the questioner, and sometimes the witness as well. But if the witness does have something that important to say, I think the jury... My experience has been juries will... They want to decide the case the right way, and they do make every effort to listen attentively to the evidence put before them. And unless there's further questions, we just reiterate our request that the case be reversed and remanded for retrial. Thank you.